PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 17 2004**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

  Plaintiff-Appellee/Cross-Appellant,

v.

ESEQUEIL SALAZAR-SAMANIEGA,

  Defendant-Appellant/
  Cross-Appellee.

Nos. 03-2076 and 03-2093

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO
## (D.C. NO. CR-01-1651-JP)

Richard A. Winterbottom, Assistant Federal Public Defender (Roger A. Finzel, Assistant Federal Public Defender, on the briefs), Office of the Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant/Cross-Appellee.

Tara C. Neda, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee/Cross-Appellant.

Before **TYMKOVICH**  and **McWILLIAMS** , Circuit Judges, and   **PAYNE** ,* Chief District Judge.

---

* James H. Payne, Chief District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

**TYMKOVICH** , Circuit Judge.

Esequeil Salazar-Samaniega was arrested in New Mexico for transporting three kilograms of cocaine. Prior to trial, Salazar-Samaniega rejected a conditional plea agreement whereby he could plead guilty and still appeal his unsuccessful motion to suppress evidence. A jury convicted him of possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

The district court sentenced Salazar-Samaniega to 78 months in prison, which included an upward adjustment for obstruction of justice arising from the district court's finding that he committed perjury at the suppression hearing. The court, however, reduced his sentence because it found that Salazar-Samaniega had accepted responsibility for his crime even though he forced the government to trial. The court concluded that Salazar-Samaniega went to trial solely to preserve his right to appeal.

Salazar-Samaniega now appeals the sentence imposed by the district court. He argues that the district court erred in 1) enhancing his sentence under the U.S. Sentencing Guidelines (USSG) § 3C1.1 for obstruction of justice, 2) failing to apply the "safety-valve" adjustment of USSG § 5C1.2(5) for provision of truthful

information, and 3) refusing to reduce his sentence under USSG § 3B1.2 for being a "minor" or "minimal" participant in the criminal scheme.

Plaintiff-Appellee United States in turn cross-appeals, arguing that the district court erred in reducing Salazar-Samaniega's sentence under USSG § 3E1.1 for accepting responsibility for his crime. Exercising jurisdiction under 18 U.S.C.A. § 3742, we affirm on all three issues brought by Salazar-Samaniega, but reverse the district court's decision to grant a USSG § 3E1.1 sentence adjustment.

Background

Deputy Peter Roth was patrolling traffic on Interstate 40 west of Albuquerque, New Mexico when he saw that the front passenger in Salazar-Samaniega's vehicle was not wearing a seatbelt. He conducted a routine traffic stop, retrieved Salazar-Samaniega's driver's license, and, speaking in Spanish, asked for the vehicle's registration and insurance. Roth then explained to the passenger, Salazar-Samaniega's uncle, that he was receiving a warning citation for not wearing a seat belt. Returning the driver's license and title to Salazar-Samaniega, Roth sought Salazar-Samaniega's permission to ask him a few questions. After Salazar-Samaniega consented, Roth asked if he could search Salazar-Samaniega's vehicle. Salazar-Samaniega said yes.

Meanwhile, Deputy Greg Reese arrived on the scene in his patrol vehicle. After Roth received consent to search the car, Reese led a police dog to Salazar-

Samaniega's car, whereupon the dog alerted to the spare tire in the back of the vehicle. Roth produced a consent form written in Spanish, read it out loud to Salazar-Samaniega, and asked Salazar-Samaniega if he understood. Salazar-Samaniega confirmed that he did, initialed the form paragraph by paragraph, and signed it. Roth then opened up the tire, and found three bags of what his cocaine test kit soon revealed to be three kilograms of cocaine. The deputies arrested Salazar-Samaniega.

During pre-trial proceedings, Salazar-Samaniega testified during a hearing on a motion to suppress evidence. Salazar-Samaniega denied many of the key facts testified to by the arresting officers, and stated that the officers, among other acts of misconduct, never read to him the written consent form. The court denied the motion to suppress evidence. Also before trial, Salazar-Samaniega and the United States conducted plea bargain negotiations. The United States offered Salazar-Samaniega a conditional plea agreement that would have allowed Salazar-Samaniega the right to appeal the district court's ruling at the suppression hearing. Salazar-Samaniega rejected the agreement because it did not specify the amount of jail time he would receive, and proceeded to trial. Salazar-Samaniega was convicted by a jury.

At the sentencing hearing, the district court found that Salazar-Samaniega had testified falsely on six separate occasions during the suppression hearing, and

accordingly enhanced Salazar-Samaniega's sentence under USSG § 3C1.1 for attempting to obstruct justice. The court also denied Salazar-Samaniega's motion to apply the USSG § 5C1.2(5) "safety-valve," which instructs courts to disregard mandatory sentence minimums if a defendant provides truthful and complete information as to the scheme in which he was involved. In addition, on the grounds that Salazar-Samaniega had conducted extensive preparations as part of his crime, the court denied a USSG § 3B1.2 reduction for being a minor or minimal participant in a criminal scheme. The court did, however, reduce Salazar-Samaniega's sentence under USSG § 3E1.1 by two levels, finding that he had accepted responsibility for his crime despite having put the government to its burden of proof at trial. The district court concluded that Salazar-Samaniega went to trial solely to preserve his opportunity to appeal the court's ruling on the motion to suppress.

Discussion

On sentence appeals we review the sentencing court's factual decisions for clear error, and its legal conclusions de novo. *United States v. Shumway*, 112 F.3d 1413, 1426 (10th Cir. 1997); *United States v. Acosta-Olivas*, 71 F.3d 375, 378 n. 3 (10th Cir. 1995). We interpret the Sentencing Guidelines "as if they were a statute," *United States v. Tagore*, 158 F.3d 1124, 1128 (10th Cir. 1998), and the Commentary to the Guidelines as "authoritative unless [they] violate[] the

Constitution or a federal statute, or [are] inconsistent with, or a plainly erroneous reading of" the Guidelines. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

I.

A.  Obstruction of Justice

Salazar-Samaniega first argues that the district court illegally enhanced his sentence under USSG § 3C1.1.  That section mandates a sentence increase if

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

USSG § 3C1.1.  Application Notes 4(b) and (f) to the Guidelines give "committing, suborning, or attempting to suborn perjury" and "providing materially false information to a judge or magistrate" as examples of the kind of conduct that warrants a sentence increase under § 3C1.1.  USSG § 3C1.1, comment. (n.4).  The Commentary to the Sentencing Guidelines defines as "material" any information "that, if believed, would tend to influence or affect the issue under determination."  USSG § 3C1.1, comment. (n.6).

The district court based its sentencing enhancement on a finding that Salazar-Samaniega testified falsely at the suppression hearing on six separate occasions.  Salazar-Samaniega's perjury included his testimony that 1) Deputy Roth first observed his vehicle from the highway median, could see that the

-6-

occupants were Mexican, and initiated the traffic stop because of their race, 2) his uncle was wearing his seat belt, 3) the officers never asked him for his consent to search the vehicle, 4) the written consent form was never read to him, 5) Roth never returned his driver's license or vehicle title, and 6) he was induced to confess by means of false promises by the officers that he would be immediately released. Salazar-Samaniega challenges some of these findings as clearly erroneous, and others as irrelevant to the question of whether sentence enhancement was proper.

We need not review each of these findings in detail, for it is clear that the district court properly found at least two instances of perjury. First, the court found that Salazar-Samaniega testified falsely at the suppression hearing that his uncle was in fact wearing a seat belt, directly contradicting the officer's testimony and attempting to cast in doubt the probable cause for the traffic stop. If believed, the testimony could have provided a basis for suppressing all of the government's evidence at trial.

Second, although Salazar-Samaniega does not challenge the falsehood of his statement that the written search consent form he initialed was never read to him, he does challenge its materiality. Salazar-Samaniega points out that the district court's finding that he gave written consent did not actually affect the outcome of the motion to suppress evidence given that the district court had

already found that he had also given verbal consent.  For false testimony to be material, however, no court has held that it must have actually affected the result in the end; rather, *if believed*, the false testimony need only have possibly affected the result at the time it was given.  *See*, *e.g.*, *United States v. Nelson*, 54 F.3d 1540, 1543-44 (10th Cir. 1995) (defendant's denial that he had a bank account that was determined not to have much money was still material, even if it did not actually affect the court's decision to impose a fine); *United States v. Smaw*, 993 F.2d 902 (D.C. Cir. 1993) (defendant's failure to disclose an asset that was determined to have no value was still material, even if it did not actually affect the court's decision to impose a fine); *United States v. Baker*, 894 F.2d 1083, 1084 (9th Cir. 1990) (a misrepresentation concerning the number of the defendant's prior convictions was still material, even if it did not actually affect his criminal history classification).  Furthermore, courts construe the bounds of materiality quite broadly.  *See United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir. 1992) (describing the threshold for materiality as "conspicuously low").

In this case, had the district court found that Salazar-Samaniega had not provided verbal consent, his testimony that he also did not give written consent may very well have caused a more credulous court to grant the motion to suppress evidence.  Salazar-Samaniega's perjury thus must be considered material under the Sentencing Guidelines.  The district court's finding that Salazar-Samaniega

attempted to obstruct justice by falsely testifying about material facts, therefore, was not clearly erroneous.

## B. Safety-Valve Adjustment

Salazar-Samaniega next argues that the district court improperly refused to apply the USSG § 5C1.2(5) "safety-valve" adjustment, which instructs courts to disregard any statutory minimum sentence if "[n]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. . . ." We have interpreted this provision to "require[] disclosure of 'everything [defendant] knows about his own actions and those of his co-conspirators.'" *United States v. Roman-Zarate*, 115 F.3d 778, 784 (10th Cir. 1997) (quoting *United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995)).

Salazar-Samaniega contends that the government "presented no evidence" that the information he provided concerning the cocaine-distribution scheme was "incomplete." Aplt. Br. at 17. "[T]he burden," however, "is on a defendant who seeks a reduction in sentence under § 5C1.2 to prove entitlement to it," *United States v. Hallum*, 103 F.3d 87, 89 (10th Cir. 1996), which burden Salazar-Samaniega failed to carry. Moreover, we agree with the district court that the government rebutted Salazar-Samaniega's showing, such as it was, of eligibility

for the safety-valve. As one officer who interviewed him testified, Salazar-Samaniega several times refused to provide information when asked, and much of the information he did provide about the distribution scheme turned out to be incomplete or contradictory. Aplee. Br. at 19-20. Although most of our cases in which we affirm a decision to deny the safety-valve have involved a defendant who provided misleading information, *see*, *e.g.*, *United States v. Virgen-Chavarin*, 350 F.3d 1122 (10th Cir. 2003), *United States v. Saffo*, 227 F.3d 1260 (10th Cir. 2000), we have held that to qualify for the safety-valve a defendant must provide information that is not merely truthful but also complete. *See Acosta-Olivas*, 71 F.3d at 379 (holding that the defendant did not qualify for the safety-valve just because he provided truthful information about his own involvement). We cannot see how absent highly unusual circumstances a defendant who fails to completely answer questions pertaining to the scheme in which he was involved can be found to have disclosed everything he knew about his own actions and those of his co-conspirators.

The district court's ruling that Salazar-Samaniega failed to qualify for the 5C1.2(5) safety-valve adjustment was not clearly erroneous.

## C. Minor Participant

Finally, Salazar-Samaniega argues that he is entitled to a USSG § 3B1.2 sentence reduction for being a minor or minimal participant in a criminal scheme.

That section instructs courts to reduce a defendant's sentence if "the defendant was a minimal [or minor] participant in any criminal activity." According to the Commentary, "this guideline is not applicable unless more than one participant was involved in the offense," § 3B1.2, comment. (n.2), and it provides a reduction only for "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." USSG § 3B1.2, comment. (n.3(A)). Accordingly, we have held that the inquiry must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense." *United States v. Calderon-Porras*, 911 F.2d 421, 423-24 (10th Cir. 1990). Once again, the defendant has the burden of proving his minor or minimal participation. *United States v. Harfst*, 168 F.3d 398, 401-02 (10th Cir. 1999).

The record in this case provides little information about the scheme in which Salazar-Samaniega was involved. Salazar-Samaniega nonetheless urges us to infer from the fact that he was transporting cocaine from California to Ohio that there must also be "individuals in California who smuggled it into the United States from a foreign nation, arranged for its distribution from a distribution point in Ohio, concealed the drugs in the spare tire in the trunk of the vehicle, and arranged for [Salazar-Samaniega] to transport the quantity to the assigned delivery point in Ohio." Aplt. Br. at 21. Even if we did infer all these things,

however, we would not commit the *non sequitur* of inferring in addition that therefore Salazar-Samaniega's own "role as a transporter of the drugs was obviously a limited and minor role relative to the roles of the [hypothetical other] individuals" who performed the tasks above." *Id*.

The only evidence that Salazar-Samaniega was not himself involved in any of these roles is the appellant's own testimony, which the district court could quite reasonably have found not credible. Moreover, Salazar-Samaniega was no innocent driver duped into delivering drugs. The record shows he first traveled with others to Ohio to obtain a false driver's license, bought and insured the courier car, returned to California where he recruited his elderly uncle to provide cover. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985). A defendant's own testimony that others were more heavily involved in a criminal scheme may not suffice to prove his minor or minimal participation, even if uncontradicted by other evidence. *See, e.g., United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999) (holding defendant's own testimony that he was "merely a middleman in the transaction, hired to bring the drugs to another contact, and that he had limited knowledge of and control over the transaction" insufficient to prove that he was a minor or minimal participant).

The district court's determination that Salazar-Samaniega failed to prove that he was a minor or minimal participant was not clearly erroneous.

## II.

Lastly, we consider the government's argument in its cross-appeal that the district court impermissibly reduced Salazar-Samaniega's sentence under USSG § 3E1.1. That section mandates a sentence decrease "if the defendant clearly demonstrates acceptance of responsibility for his offense." The United States makes two points. First, since the district court found Salazar-Samaniega had obstructed justice through perjury at the suppression hearing, the court should not have granted Salazar-Samaniega an acceptance of responsibility adjustment. Second, by forcing the United States to trial and denying his factual guilt, Salazar-Samaniega further forfeited his eligibility for the adjustment.

We review the sentencing court's factual decisions for clear error and its legal conclusions *de novo*, and the defendant has the burden of establishing his entitlement to the reduction. *United States v. Marquez*, 337 F.3d 1203, 1209 (10th Cir. 2003).

## A.

The district court's finding that Salazar-Samaniega accepted responsibility for his crime is seemingly at loggerheads with its earlier finding that he also obstructed justice. As the Commentary on the Guidelines sensibly observes,

"[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." USSG § 3E1.1, comment. (n.4). Though in tension with one another, the two adjustments are not necessarily inconsistent, for "[t]here may . . . be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." *Id.*

We have yet to address clearly the question of when conduct is "extraordinary" so as to merit adjustments for both obstruction of justice and acceptance of responsibility. We touched on the issue in *United States v. Hawley*, 93 F.3d 682 (10th Cir. 1996). There, we held that the district court did not err in failing to accept a downward acceptance of responsibility adjustment where the defendant had violated an appearance bond prior to pleading guilty and entering into a plea agreement. *Id.* at 689. Without elaboration, we noted that a "sentencing court can consider if there has been a 'voluntary termination or withdrawal from criminal conduct or associations.'" *Id.* (quoting Application Note 1(b)). We refused there to accept a broad reading of the Ninth Circuit's discussion of what constitutes an "extraordinary case" in *United States v. Hopper*, 27 F.3d 378 (9th Cir. 1994).

In *Hopper*, the Ninth Circuit reasoned that "the relevant inquiry for determining if a case is an extraordinary case . . . is whether the defendant's

-14-

obstructive conduct is *not inconsistent* with the defendant's acceptance of responsibility," and thus an extraordinary case can exist "when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." 27 F.3d at 383 (9th Cir. 1994) (emphasis in original). Applying this broad rule, the court allowed an adjustment where the defendant had prior to arrest burned evidence and attempted to establish an alibi because he later pleaded guilty and disclosed information about his crimes.

The Sixth Circuit recently adopted the reasoning of *Hopper* in *United States v. Gregory*, 315 F.3d 637, 640 (6th Cir. 2003), stating that "we have implicitly adopted the standard of *Hopper* in unpublished cases," and thereby reversed a district court decision to deny a reduction to a defendant whose obstructive conduct predated the indictment and thereafter never denied responsibility and guilt.

The Eighth Circuit, in contrast, explicitly rejected a "broad reading" of *Hopper* in favor of an inquiry "into the particular circumstances of the defendant's case: was the defendant's obstructive conduct a relatively brief or early aberration, or was it a methodical, continued effort to obstruct justice?" *United States v. Honken*, 184 F.3d 961, 972 (8th Cir. 1999). The sentencing court according to *Honken* must consider the

> totality of the circumstances, including the nature of the [defendant's] obstructive conduct and the degree of [his] acceptance of responsibility.  Among other things, the district court should [consider] whether, for example, the obstruction of justice was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution.  It should [consider] whether [defendant] voluntarily terminated his obstructive conduct, or whether the conduct was stopped involuntarily by law enforcement.

*Id.* at 968-69.

Other circuits have lined up behind *Honken*.  The Fifth and Seventh Circuits have followed *Honken* in rejecting the *Hopper* test.  *See United States v. Chung*, 261 F.3d 536, 540 (5th Cir. 2001) ("this case is a fine example of *Hopper*'s limitations" for defendant's obstructive conduct, though it ceased, still "forced the government to waste resources preparing for trial"); *United States v. Buckley*, 192 F.3d 708, 711 (7th Cir. 1999) (*Hopper* "is inconsistent with the language of the guidelines and, we add, with common sense" for, as in the case at hand, "[t]he fact that a defendant having done everything he could to obstruct justice runs out of tricks, throws in the towel, and pleads guilty does not make him a prime candidate for rehabilitation").

We agree with the analysis of the Eighth Circuit in *Honken*.  We therefore hold that in determining whether a case is "extraordinary" so as to merit both a § 3E1.1 reduction and a § 3C1.1 enhancement, the sentencing court must consider the totality of the circumstances, including, but not limited to 1) whether the

-16-

obstruction of justice was an isolated incident or an on-going, systematic effort to obstruct the prosecution, and 2) whether defendant voluntarily terminated his obstructive conduct and truthfully admitted the conduct comprising the offense of conviction.

In this case, despite being asked by the government for such a determination, the district court made no findings to support a conclusion that Salazar-Samaniega presented an extraordinary case that would merit an adjustment. On the contrary, Salazar-Samaniega's attempt to suppress the evidence necessary to the government's case by perjuring himself at the suppression hearing looks very much like it was part of a systematic, non-aberrational, and voluntary plan to avoid responsibility. Although admission of the factual elements of guilt is certainly essential to a finding that a defendant accepted responsibility for his crime, it is not sufficient. As the Commentary makes clear, even a guilty plea "may be outweighed by conduct of the defendant that is inconsistent with [] acceptance of responsibility." USSG § 3E1.1, comment. (n.2) (*e.g.*, falsehoods at the sentencing hearing). Here, of course, Salazar-Samaniega never pleaded guilty, but proceeded to trial.

While the "sentencing judge is entitled to great deference on review" of an acceptance-of-responsibility adjustment, *id.*, comment. (n. 5), it is the obligation of the defendant to present evidence to support the adjustment and the district

-17-

court to make such findings on the record. The district court's failure here to make specific findings as to why Salazar-Samaniega's case is extraordinary in light of his substantial perjury and obstruction of justice thus constitutes error.

B.

We finally must determine whether Salazar-Samaniega's decision to put the government to its burden of proof at trial also undermines the district court's conclusion that he accepted responsibility for his crime.

The Commentary to the Sentencing Guidelines stipulates that "[the] adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG § 3E1.1, comment. (n.2). This principle, however, is not absolute, for

> [c]onviction by trial . . . does not automatically preclude a defendant
> from consideration for such a reduction. In *rare situations* a
> defendant may clearly demonstrate an acceptance of responsibility
> for his criminal conduct even though he exercises his constitutional
> right to a trial. This may occur, for example, where a defendant goes
> to trial to assert and preserve issues that do not relate to factual guilt
> (*e.g.*, to make a constitutional challenge to a statute or a challenge to
> the applicability of a statute to his conduct). In each such instance,
> however, a determination that a defendant has accepted responsibility
> will be based primarily upon pre-trial statements and conduct.

*Id.* (emphasis added).

We last interpreted this Commentary in two cases in 1999. In *United States v. Hill*, 197 F.3d 436 (10th Cir. 1999), we upheld a denial of a § 3E1.1 reduction

-18-

to a defendant who claimed that he went to trial solely "to preserve his legal argument that the conduct charged in the indictment did not violate the [criminal] statute." 197 F.3d at 446. We found this claim untenable given that the defendant had indeed challenged one of the factual elements of the crime, namely, "that his conduct was innocent and without intention to [commit the relevant crime]." *Id.* at 447.

In contrast, in *United States v. Gauvin*, 173 F.3d 798, 806 (10th Cir. 1999), we upheld a district court adjustment under the clear error standard where the defendant admitted to his criminal conduct in testimony at trial but challenged the applicability of the statute to his conduct. Addressing the adjustment, we found a narrow application of the Guidelines not to constitute clear error where a defendant chose the path of trial:

> the Commission notes that [an acceptance-of-responsibility reduction] may apply where the defendant "challenge[s] ... the applicability of a statute to his conduct." Mr. Gauvin admitted to all the conduct with which he was charged. He simply disputed whether his acknowledged factual state of mind met the legal criteria of intent to harm or cause apprehension.

*Id.* at 806 (quoting USSG § 3E1.1, comment. (n.4)) (citations omitted).

The court in *Gauvin*, however, did recognize that only in "rare" circumstances can a defendant who goes to trial qualify for an acceptance-of-responsibility reduction, and, indeed, it admitted that it "might not have reached

the same decision" as the district court absent the clear error standard of review. 173 F.3d at 806. Furthermore, in *Gauvin* we rested our decision "*in part* on the fact that Mr. Gauvin went to trial only to contest the legal element of intent." *Id.* (emphasis added). We were also persuaded that the defendant asserted in "good faith" his *mens rea* defense that he only committed the criminal act because he was "drunk and scared." *Id.* Therefore, we concluded that the district court did not clearly err by applying the adjustment to defendant's sentence.

Here, in contrast, Salazar-Samaniega argued at trial that the government did not present sufficient evidence to prove the factual element of intent to distribute cocaine. Instead, the essence of his defense was that since he did not know that he was transporting a large quantity of cocaine he could not have understood he was in the chain of distribution and therefore did not commit the crime alleged. IV R.O.A., Tr. of Proceedings, at 149 (June 11, 2002). Unlike the defendant who testified truthfully in *Gauvin*, Salazar-Samaniega attempted at trial to deny a key factual element of the crime. He thus forfeited his claim to an adjustment under § 3E.1.1 much like the defendant in *Hill*.

Salazar-Samaniega, nonetheless, also argues (and the district court agreed) that he can be excused for burdening the government with a jury trial because he only did it to preserve his right to appeal. First, as we point out above, Salazar-Samaniega contested a factual element of guilt at trial and ordinarily would be

ineligible for an adjustment under the Guidelines. Second, the preservation of a right to appeal could only infrequently qualify as the "rare situation" contemplated by the Guidelines. In certain circumstances, the Guidelines do allow the situation where a defendant can preserve an appellate challenge, go to trial, and still be eligible for the adjustment. *See*, *e.g.*, *United States v. Rodriquez*, 975 F.2d 999, 1008-09 (3d Cir. 1994) ("[the district court] erred in failing to consider the reasons for which [defendants] refused to plead [guilty] to the entire indictment, along with the apparent validity of those reasons"). The Guidelines envision, however, that most of the time the defendant will lose his claim for a downward adjustment if he chooses such a path. Salazar-Samaniega's argument is especially hollow here, for he in fact rejected a conditional plea that would have preserved his post-sentence right to appeal. Aplee. Br. App. (Exhibit C).

The district court made no findings to support a conclusion on this record as to why Salazar-Samaniega's false testimony at the suppression hearing, his rejection of a conditional plea agreement, and his challenge to the government's evidence at trial constituted the "rare situation" meriting an adjustment under § 3E1.1. Ordinarily, we therefore would remand this case for additional findings by the sentencing judge. *United States v. Ramstad*, 219 F.3d 1263, 1265 (10th Cir. 2000). However, the record plainly discloses that Salazar-Samaniega is not

eligible under the Commentary for an adjustment since he forced the government to trial and denied an "essential factual element[] of the crime." We thus need not remand for additional record development.

In conclusion, the district court's adjustment for acceptance-of-responsibility was clearly erroneous.

III.

The decision of the district court is affirmed in part and reversed in part. We remand for re-sentencing in accordance with this opinion.