F I L E D
**United States Court of Appeals
Tenth Circuit**

**MAY 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OSWALDO RAMIREZ BARRON,

Defendant - Appellant.

No. 03-2106
(D. Ct. No. CR-01-396-MV)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **LUCERO**, and **MURPHY**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant Oswaldo Ramirez Barron pleaded guilty to one count of possessing with intent to distribute more than fifty grams of methamphetamine

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). Mr. Barron contends that the District Court erred in failing to grant him a downward adjustment due to his minor role in the overall drug trafficking endeavor. *See* U.S. Sentencing Guidelines Manual § 3B1.2 (2002) ("U.S.S.G."). We take jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In March 2001, Mr. Barron left Calexico, California for Atlanta, Georgia in a tractor-trailer, acting as translator for the driver, Mr. Lobatos. The truck contained 123.2 kilograms of cocaine and 2.431 kilograms of methamphetamine. Mr. Sierra, the presumed ring-leader of the operation, followed the truck in a separate car. Along the way, they entered the New Mexico Port of Entry in Gallup, New Mexico. Anticipating that law enforcement officers would discover the drugs, Mr. Barron fled on foot. Subsequently, the officers arrested Mr. Lobatos. Mr. Barron was arrested a day later. Apparently, Mr. Sierra remains at large and has not been charged regarding this incident.

Mr. Barron pleaded guilty to possessing methamphetamine with intent to distribute, in exchange for the dropping of all other charges against him. Although Mr. Lobatos received a minor-participant reduction, the presentencing report ("PSR") did not recommend granting Mr. Barron a similar reduction pursuant to U.S.S.G. § 3B1.2. Mr. Barron's PSR justified this differential

treatment because he "made the arrangements to transport drugs from Calexico, California to Atlanta, Georgia," while Mr. Lobatos did not "direct[] any other participants." Mr. Barron filed an objection to the PSR, which the district court overruled.

Defense counsel presented the thrust of this objection during the sentencing hearing:

> [W]e're contending that [Mr. Barron] was a minor participant. . . . There was another individual, . . . Jose Luis Sierra, who is actually the overseer, or sort of the foreman . . . of this particular trip . . . . It's our contention that [Mr. Barron] was working at the order of Mr. Jose Luis Sierra.

Mr. Barron attempted to make this argument by proffer. The District Court, in rejecting this attempt, noted: "This is too important. I don't want your proffer, and I won't accept that, and I don't have reports to the effect of what you're saying. So if you want to put [Mr. Barron] on the stand, that's fine." Mr. Barron proceeded to testify that he was working under the direction of Mr. Sierra. Mr. Barron's testimony was the only evidence submitted of his minor role. The District Court discounted this testimony, stating: "I do not find your testimony truthful." Instead, the District Court credited the facts as stated in the PSR as accurate. Mr. Barron filed a timely notice of appeal.

## II. STANDARD OF REVIEW

On sentencing appeals, we review the sentencing court's factual findings

"for clear error and its legal conclusions de novo." *United States v. Shumway*, 112 F.3d 1413, 1426 (10th Cir. 1997). We interpret the Sentencing Guidelines "as if they were a statute," *United States v. Plotts*, 347 F.3d 873, 876 (10th Cir. 1998) (quotations omitted), and the commentary to the Guidelines as "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of" the Guidelines, *Stinson v. United States*, 508 U.S. 36, 38 (1993). The defendant has the burden of proving his minor or minimal participation. *United States v. Harfst*, 168 F.3d 398, 401-02 (10th Cir. 1999).

### III. DISCUSSION

On appeal, Mr. Barron argues that the District Court "erred as a matter of law in failing to consider Mr. Barron's role in the context of other participants [i.e., Mr. Sierra] in the relevant conduct for which he was held accountable at sentencing." We disagree.

U.S.S.G. § 3B1.2 instructs courts to reduce a defendant's sentence if "the defendant was a minimal [or minor] participant in any criminal activity." U.S.S.G. § 3B1.2(a)-(b). According to the commentary, "[t]his guideline is not applicable unless more than one participant was involved in the offense," U.S.S.G. § 3B1.2, Application Note 2, and it provides a reduction only for "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant[,]" U.S.S.G. § 3B1.2, Application Note

3(A). The court may compare the defendant's conduct to that of a codefendant or that of an uncharged person who played a role in the criminal endeavor. *See* U.S.S.G. § 3B1.2, Application Note 3(A); U.S.S.G. Supplement to Appendix C, Amendment 635 (2001) (amending U.S.S.G. § 3B1.2, Application Note 3(A)).

Accordingly, we have held that the minor-participant inquiry must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense." *United States v. Calderon-Porras*, 911 F.2d 421, 423 (10th Cir. 1990). Given the nature of this focus, "[t]he determination whether to apply [U.S.S.G. § 3B1.2] . . . involves a determination that is heavily dependant upon the facts of the particular case. . . . [T]he court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." U.S.S.G. § 3B1.2, Application Note 3(C).

The record belies Mr. Barron's assertion that the District Court did not consider whether Mr. Barron's role was minor compared to that of Mr. Sierra, as it is replete with in-court testimony regarding Mr. Barron's subservient role in relation to Mr. Sierra. The following questions asked of Mr. Barron by his counsel are indicative:

Q. Who was Sierra, and what did he do?
A. Sierra was in charge of the operation. He had the contacts in Los Angeles to receive the drugs, and had the contacts in Atlanta to deliver them.

- 5 -

Q. Did you know the contacts in California?
A. No.
Q. Did you know the contacts in Atlanta?
A. No, I didn't.
Q. Okay. Who were you working for during this particular - -
A. Jose Luis Sierra.
Q. You were working by his orders?
A. Yes.
 . . . .
Q. - - would it be fair to say that you were functioning as an interpreter?
 . . . .
A. Yes. Yes.
 . . . .
Q. And who were you paid by?
A. Jose Luis [Sierra].

A similar discussion, albeit from a different perspective, occurred during the government's cross-examination.

In the face of this record, Mr. Barron asserts that "the [district] court focused on the slight differences between [Mr. Barron's] role and that of his co-defendant, Lobatos, and did not consider the significant difference between Mr. Barron's role and that of Sierra." In so doing, Mr. Barron claims that the District Court failed to conform to the dictates of U.S.S.G. § 3B1.2, Application Note 3(A). *See id.* (a court "is not precluded" from considering an uncharged person who played a role in the criminal endeavor when determining whether the defendant played a minor role).

This contention misstates the record. As the record demonstrates, the District Court heard live testimony regarding the respective roles of Messrs.

Barron and Sierra. The only reasonable conclusion one can reach from the record is that the District Court considered the distinctions between Messrs. Barron and Sierra, but did not find Mr. Barron's testimony credible.

In a nearly identical U.S.S.G. § 3B1.2 case, we held:

> The only evidence that [the defendant] was not himself involved in any of these [non-minor] roles is the appellant's own testimony, which the district court could quite reasonably have found not credible. . . .Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. A defendant's own testimony that others were more heavily involved in a criminal scheme may not suffice to prove his minor or minimal participation, even if uncontradicted by other evidence. *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004) (internal citations and quotations omitted).

As *Salazar-Samaniega* makes clear, the District Court need not have found Mr. Barron's testimony credible; and, absent extraordinary facts not found in this record, we will not second-guess such a finding by the District Court. *See United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999) (holding that the defendant's own testimony that he was "merely a middleman in the transaction, hired to bring the drugs to another contact, and that he had limited knowledge of and control over the transaction" was insufficient to prove that he was a minor or minimal participant).

### III. CONCLUSION

Because the record demonstrates that the District Court heard testimony of

Mr. Barron's role in relation to that of Mr. Sierra, but found it untruthful, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge