**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 6, 2007**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

FRED HOWARD,

　　　　Defendant - Appellant.

No. 05-3428
(D. Kansas)
(D.Ct. No. 03-CR-20146-CM)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

_____

　　　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

　　　　Fred Howard was charged in a superseding indictment with distribution of five grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Counts 1 and 2), the manufacture and possession

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

with intent to distribute fifty grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) (Count 3), and the attempted intimidation of a witness in violation of 18 U.S.C. § 1512(b)(1) (Count 4).[1] On April 2, 2004, Howard pled guilty to Counts 1-3 without benefit of a plea agreement. On May 3, 2004, Count 4 was dismissed at the government's request. Eventually, Howard was allowed to withdraw his plea as to Count 3, which was subsequently dismissed on February 15, 2005, upon motion of the government. The Presentence Investigation Report (PSR) calculated a sentencing range of 188 to 235 months imprisonment. Howard objected to the PSR calculation and argued the guideline range was unreasonable under *United States v. Booker*, 543 U.S. 220 (2005). The district court overruled the objections and sentenced Howard to 188 months imprisonment on October 31, 2005. Howard filed a timely notice of appeal. We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and AFFIRM.

## BACKGROUND

The PSR grouped Counts 1 and 2 pursuant to USSG §3D1.2(d).[2] It found the total amount of drugs involved in the two counts to be the equivalent of

---

[1] The original indictment, filed October 16, 2003, contained only Counts 1 and 2.

[2] The November 2004 edition of the United States Sentencing Guidelines Manual was used in this case.

1,404.18 kilograms of marijuana.[3] Under §2D1.1(c)(4), the base offense level for at least 1,000 kilograms but less than 3,000 kilograms of marijuana was 32. The PSR then recommended a two level enhancement for Howard's possession of a loaded handgun pursuant to §2D1.1(b)(1), as well as a two level enhancement for obstruction of justice pursuant to §3C1.1 based on his contact with the mother of a potential government witness.[4] This resulted in a total offense level of 36. Coupled with Howard's Criminal History Category of I, the resulting guideline range was 188 to 235 months imprisonment. The statutory minimum term of imprisonment was five years and the maximum was forty years. 21 U.S.C. § 841(b)(1)(B).

Howard filed five objections to the PSR. First, Howard objected to the two level obstruction of justice adjustment. He maintained he never instructed his father to intimidate the witness or the witness' mother but rather merely asked his father to contact the mother to inquire about the witness' availability for trial. Howard next challenged the PSR's determination that a two level downward adjustment for acceptance of responsibility was not warranted. Howard further challenged the firearm enhancement and the PSR's decision not to recommend a

---

[3] The PSR attributed 69.8 grams of cocaine base (crack) and 40.9 grams of cocaine hydrochloride to Howard. Pursuant to Application Notes 6 and 10 to USSG §2D1.1, these drug amounts were converted to their marijuana equivalents resulting in a total of 1,404.18 kilograms of marijuana.

[4] It was this contact that served as the basis for Count 4 of the superseding indictment.

"safety valve" reduction under USSG §5C1.2.  Howard also alleged the recommended sentence violated his Fifth Amendment due process rights and was unreasonable under *United States v. Booker*, 543 U.S. 220 (2005).  After conducting an evidentiary hearing, the district court overruled Howard's objections and imposed a sentence at the bottom of the guideline range.

## DISCUSSION

Predictably, Howard makes six arguments on appeal:  (1) the district court erred in applying the obstruction of justice adjustment under USSG §3C1.1; (2) the district court erred in denying him credit for acceptance of responsibility under USSG §3E1.1; (3) the district court erred in enhancing his sentence for possession of a firearm under USSG §2D1.1(b)(1); (4) the district court erred by not applying USSG §5C1.2's "safety valve"; (5) the district court violated his Fifth Amendment rights by engaging in judicial fact-finding of relevant conduct; and (6) the 188 month sentence was unreasonable under *Booker*.

"When reviewing a district court's application of the Sentencing Guidelines, we review legal questions *de novo* and . . . factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Doe*, 398 F.3d 1254, 1257 (10th Cir. 2005) (quotations omitted).  "A district court's factual finding is clearly erroneous only if it is without factual support in the record or if this court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been

-4-

made." *United States v. Patron-Montano,* 223 F.3d 1184, 1188 (10th Cir. 2000) (quotations omitted). "Notably, *Booker* does not alter the scope of review we apply to these challenges." *United States v. Apperson*, 441 F.3d 1162, 1210 (10th Cir. 2006), *cert. denied*, ___ S.Ct. ___, 2007 WL 36247, and *sub. nom*, ___ S.Ct. ___, 2007 WL 37456 (2007). However, after *Booker*, we review the sentence imposed for unreasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 261; *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). We consider each of Howard's arguments in turn.

*I. Obstruction of Justice*

USSG §3C1.1 mandates a two level upward adjustment if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense" and "the obstructive conduct related to [] the defendant's offense . . . ." Application Note 4 makes clear that intimidating a witness, or attempting to do so, qualifies as obstruction of justice. USSG §3C1.1, comment. (n.4(a)). Application Note 9 holds defendants accountable for actions undertaken by others at their instruction. USSG §3C1.1, comment. (n.9).

The essence of Howard's argument is that his conduct does not rise to the level of witness intimidation. Under his version of events, he simply instructed his father to contact the mother of a potential witness to check on the witness' availability for trial, and the actions taken on his behalf "were no different than

those routinely taken by attorneys and investigators for both the government and the defense in preparation for trial." (Appellant's Br. at 9.)

What Howard never acknowledges, however, is that the potential witness, who he repeatedly lists by name, was in fact a confidential informant. Howard had to identify the informant, locate the informant's mother, and then direct his father, with the help of Howard's girlfriend, to contact the mother. According to testimony provided at sentencing, the informant's mother perceived the visit from Howard's father and girlfriend as threatening. As the government points out, regardless of Howard's intent, "[t]his conduct served the purpose of notifying the confidential [informant] that his identity was no longer secret and that his family members could be easily accessed by the defendant." (Appellee's Br. at 12.) If Howard had simply desired an innocuous check into the availability of a potential witness, he could have directed the request to his attorney. The district court did not err in applying the §3C1.1 adjustment.

## II. *Acceptance of Responsibility*

Section 3E1.1(a) of the sentencing guidelines allows a defendant a downward adjustment of his offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Application Note 4 clarifies that "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." USSG §3E1.1, comment. (n.4).

Thus, Howard's obstruction of justice adjustment under §3C1.1, which based on our analysis above was appropriately applied in this case, clearly militates against granting him a downward adjustment for acceptance of responsibility.

However, Howard argues he meets the extraordinary circumstances exception laid out in *United States v. Salazar-Samaniega*, thus allowing the district court to grant him an acceptance of responsibility adjustment despite the §3C1.1 enhancement. 361 F.3d 1271, 1280 (10th Cir. 2004).[5] In *Salazar-Samaneiga*, we held "in determining whether a case is 'extraordinary' so as to merit both a § 3E1.1 reduction and a § 3C1.1 enhancement, the sentencing court must consider the totality of the circumstances, including, but not limited to 1) whether the obstruction of justice was an isolated incident or an on-going, systematic effort to obstruct the prosecution, and 2) whether defendant voluntarily terminated his obstructive conduct and truthfully admitted the conduct comprising the offense of conviction." *Id*.

Howard asserts the district court erred by not considering his exceptional circumstances and we should remand so the district court can "address the *Salazar*[-*Samaniega*] standard." (Appellant's Br. at 13.) The district court's omission of a discussion of *Salazar-Samaniega*'s exceptional circumstances

_____

[5] This exception is based on Application Note 4's acknowledgment that "[t]here may . . . be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply." USSG §3E1.1, comment. (n.4).

standard is understandable, for the simple reason that Howard did not raise it below. While he claimed his case was of the extraordinary nature mentioned in Application Note 4, *see supra* n.5, he never expressly raised *Salazar-Samaniega*. Moreover, his objection to the PSR's failure to award an acceptance of responsibility adjustment was largely confined to the appropriateness of the obstruction of justice adjustment. As a general rule, this Court will not consider a new theory on appeal, even one "that falls under the same general category as an argument presented [below.]" *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 798-99 (10th Cir.) (quotation omitted), *opinion amended on other grounds by* 103 F.3d 80 (10th Cir. 1996).

Nevertheless, even if we were to consider this argument, Howard fails to meet the requirements of *Salazar-Samaniega* for two reasons. First, as the government points out, Howard's conduct was not an isolated event. Howard had to discover the confidential informant's identity, locate the informant's mother, write to his father to request that he contact the informant's mother, arrange transportation for his father, and call his father to ensure the mother would be contacted prior to trial. Such conduct hardly qualifies as an "isolated incident," but rather is an "on-going systematic effort" to obstruct justice. *Salazar-Samaniega*, 361 F.3d at 1280. Second, Howard failed to establish he voluntarily terminated his obstructive conduct. Because of Howard's efforts, the informant's mother had to be relocated, precluding further contact. After being indicted for

-8-

attempted intimidation of a witness, Howard pled guilty to the drug trafficking charges. His plea, entered immediately prior to trial, obviated the need for any further contact with the confidential informant or his mother. Howard fails to satisfy the exceptional circumstances standard. *See United States v. Buckley,* 192 F.3d 708, 711 (7th Cir. 1999) ("The fact that a defendant having done everything he could to obstruct justice runs out of tricks, throws in the towel, and pleads guilty does not make him a prime candidate for rehabilitation.").

*III. Possession of a Firearm*

USSG §2D1.1(b)(1) provides for a two level increase in the offense level for drug offenses "[i]f a dangerous weapon (including a firearm) was possessed . . . ." Weapon possession for purposes of §2D1.1(b)(1) "is established if the government proves by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993) (quotations omitted). This is generally accomplished if "the government . . . provide[s] evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." *Id*. at 983 (quotations omitted). Once the government has made a sufficient showing, the burden is on the defendant to prove that it was "clearly improbable that the weapon was related to the offense." *United States v. Robertson*, 45 F.3d 1423, 1449 (10th Cir. 1995) (quotations omitted).

Howard denies he possessed the firearm found in the house outside of which he was arrested. He argues the government failed to adequately establish by "direct evidence" that he possessed the gun. (Appellant's Br. at 15.) In support, he cites the lack of "photographic, DNA, fingerprint, or registration evidence" showing he possessed the gun. (*Id*.) Failing that, Howard argues the government did not establish his possession of the firearm was related to his drug activities.

Howard misjudges the amount and nature of the evidence sufficient to find possession of a firearm for purposes of §2D1.1(b)(1). While the government adduced none of the evidence cited by Howard, it did establish a significant connection between Howard, his drug activity and the firearm: Howard was arrested outside a house in Kansas City, Kansas, in which the firearm and drugs were found; Howard had keys to the house; there was evidence he was directing his mother to make payments on the house; a Kansas identification card issued to Howard, a receipt to Howard documenting his down payment for the purchase of the house, items associated with the manufacture of crack cocaine and 24.5 grams of crack cocaine were found in the kitchen; two Kansas driver's licenses issued to Howard, a bill in his name and 40.9 grams of cocaine hydrochloride were found in the northeast bedroom, where the firearm and drugs were found; and, most significantly, the firearm was found in the pocket of a shirt hanging next to other

-10-

shirts with dry cleaning tags bearing Howard's name.[6] This evidence is more than sufficient to establish that "the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." *Roederer*, 11 F.3d at 983 (quotations omitted).

Howard's bald assertions that other people had access to the home or could have owned the firearm do not establish that it was "clearly improbable" the gun was related to his drug offenses. Based on this evidence, the district court did not err in applying the §2D1.1(b)(1) enhancement.

*IV. Safety Valve*

The "safety valve" in §5C1.2(a) allows a court to sentence a defendant below the statutory minimum if "the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)." Among the listed criteria is the requirement that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common

---

[6] The crack cocaine and cocaine hydrochloride found in the house served as the basis for Count 3, possession with intent to distribute at least fifty grams of cocaine base (crack cocaine). Howard originally pled guilty to Count 3, but was permitted to withdraw the plea when it was discovered a lab report had mistakenly identified all of the drugs as crack cocaine, when 40.9 grams were actually cocaine hydrochloride. The government then moved to dismiss Count 3 as it specifically alleged fifty grams of cocaine base. The motion was granted.

scheme or plan . . . ."[7]  18 U.S.C. § 3553(f)(5); USSG §5C1.2(a)(5)

In this case, the district court found Howard "ha[d] not provided [the] government all information and evidence [he had] concerning the offense or offenses.  Therefore, [the] court would find that he did not provide complete and truthful information to the government regarding his criminal conduct, and is therefore not eligible for a safety valve reduction . . . ."  (R. Vol. V at 102.)  We are inclined to agree.  As the government pointed out at sentencing, Howard was not entirely forthcoming about the drugs located in the house.  Those drugs served as the basis of Count 3, to which Howard originally pled guilty and then withdrew his plea.  When questioned about the drugs, Howard did not answer.

Howard argues he nevertheless provided truthful information about the charged offenses against him and that he should be exempted from any additional disclosure because it could be used against him in a future prosecution.  Howard misreads §5C1.2(a)(5).  Not only must he provide "all information and evidence [he] has concerning the offense[s]" with which he was charged, but also "offenses that were part of the same course of conduct or of a common scheme or plan" in

---

[7] The defendant also must not have "use[d] violence or credible threats of violence or possess[ed] a firearm or other dangerous weapon . . . in connection with the offense." 18 U.S.C. § 3553(f)(2); USSG §5C1.2(a)(2).  In light of the district court's finding with respect to the §2D1.1(b)(1) enhancement, *i.e.*, that Howard possessed a firearm, this requirement seems the most immediate obstacle to Howard's quest for the application of the safety valve.  However, we have previously held that enhancement under §2D1.1(b)(1) and the grant of the safety valve are not necessarily mutually exclusive. *See United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1188 (10th Cir. 2004).

order to take advantage of the safety valve. This he plainly did not do with respect to the drugs found in the house. Moreover, even if the additional drugs were not "part of the same course of conduct or of a common scheme or plan," which is hard to imagine, Howard's argument ignores that he was originally charged in Count 3 with possession of the Brickel drugs. While Howard has every right to decline to answer questions pursuant to his Fifth Amendment right to remain silent, exercising such right may come at the expense of the benefit of the safety valve in §5C1.2(a)(5), as it did here. *See United States v. Warren*, 338 F.3d 258, 266-67 (3d Cir. 2003) (holding the safety valve qualifies as a denied benefit, not a penalty for purposes of Fifth Amendment rights).

*V. Judicial Fact-Finding--Fifth Amendment*

"[T]he Supreme Court's holding in *Booker*" does not prohibit "the district court from making the same factual findings and applying the same enhancements and adjustments to [the defendant's] sentence" that it could before *Booker*, "as long as it [does] not apply the Guidelines in a mandatory fashion." *United States v. Lawrence,* 405 F.3d 888, 907 (10th Cir.), *cert. denied*, 126 S.Ct. 468 (2005). Rather, "the Supreme Court . . . imposed a global remedy for the Sixth Amendment difficulties with the Sentencing Guidelines, invalidating their mandatory application and instead requiring district courts to consult them in an advisory fashion." *United States v. Labastida-Segura,* 396 F.3d 1140, 1142 (10th Cir. 2005) (citing *Booker,* 543 U.S. at 245); *see also United States v. Magallanez,*

408 F.3d 672, 685 (10th Cir. 2005) ("[W]hen a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more onerous reasonable doubt standard. In this respect, the prior Guidelines scheme is unchanged by the seeming revolution of *Booker*."), *cert. denied*, 126 S.Ct. 1089 (2006). Thus, it is clear that judicial fact-finding under an advisory guideline scheme does not violate the Sixth Amendment.

Howard claims, however, that Fifth Amendment due process forbids using judicial fact-finding regarding relevant conduct to increase a sentence. He correctly acknowledges we have previously rejected a similar claim. *See United States v. Rines*, 419 F.3d 1104, 1106-07 (10th Cir.), *cert. denied* 126 S.Ct. 468 (2005). Nevertheless, he raises the issue "at least to preserve his claim for further review" and "asks the Court to rule differently in his case." (Appellant's Br. at 25.) We are bound by our prior precedent "absent en banc reconsideration or a superseding contrary decision by the Supreme Court," *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993), and decline his request.

*VI. Reasonableness of Sentence*

In *United States v. Kristl*, we fashioned a two-step approach for post-*Booker* appellate review of sentences imposed within the applicable guideline range. 437 F.3d at 1055. First, we determine whether the district court correctly calculated the applicable guideline range. *Id*. at 1054-55. If so, the sentence "is

presumptively reasonable" subject to rebuttal by the defendant "in light of the other sentencing factors laid out in § 3553(a)." *Id*. at 1055.

Under this standard, Howard's sentence is not unreasonable. As laid out above, he was sentenced within a correctly calculated guideline range. Thus, the sentence imposed in this case is presumptively reasonable. *Id*. Howard has failed to adequately rebut the presumption of reasonableness by establishing the sentence was unreasonable in light of the sentencing factors in § 3553(a). While Howard's lack of a criminal history counsels in favor of a relatively lighter sentence, the district court considered this when it applied the sentencing factors in § 3553(a) and sentenced Howard at the bottom of the sentencing range. The fact Howard's drugs "went not to the streets, but to law enforcement," (Appellant's Br. at 27), is not a sufficient basis to find his sentence unreasonable.

We AFFIRM Howard's sentence. Counsel for Appellant's request to appoint new counsel is DENIED. Counsel for Appellant's motion to withdraw from representation in this matter is GRANTED. Appellant has filed a "Motion for Leave to File a Pro Se Supplemental Citation to Original Appeal Brief Pursuant to Rule 28(j) Fed.R.Civ.P." The motion for leave to file is granted. It contained Appellant's arguments and authorities which we have considered.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

-15-