FILED
United States Court of Appeals
Tenth Circuit

**November 29, 2007**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff–Appellee,

v.

LUIZ AISPURO-MEDINA, a/k/a
TADEO LOAIZA-AISPURO,

    Defendant–Appellant.

No. 07-8017
(D.C. No. 06-CR-158-B)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

---

Appellant Luis Aispuro-Medina appeals his conviction for possession of

cocaine with intent to distribute under 21 U.S.C. § 841(a)(1) & (b)(1)(A), to

which he pled guilty after denial of a suppression motion, on Fourth Amendment

grounds. He also appeals the denial of several sentencing reductions and

application of an obstruction of justice enhancement in the calculation of his

---

[*] The case is unanimously ordered submitted without oral argument
pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 32.1.

advisory Guidelines sentencing range. We **AFFIRM** Aispuro-Medina's conviction but **REVERSE** the sentence and **REMAND** to the district court with instruction to **VACATE** the sentence and resentence defendant.

**I**

Aispuro-Medina was pulled over for speeding by Wyoming Highway Patrol Trooper Joe Ryle on Interstate 25 near Douglas, Wyoming on May 23, 2006. He was driving a Ford Explorer. Ryle began to question Aispuro-Medina, asking three times if he had a "green card." Aispuro-Medina initially answered Ryle's questions in Spanish and indicated that he spoke no English, but he answered "no" in English each time Ryle asked about a green card. This answer led Ryle to suspect that Aispuro-Medina might be an undocumented immigrant.

During the questioning, Aispuro-Medina gave Ryle a Wisconsin probationary driver's license bearing the name of "Tadeo Loaiza-Aispuro" and a five-day-old California registration for his vehicle, which had California plates. The two documents listed different residential addresses. When Ryle asked Aispuro-Medina about his destination, Aispuro-Medina answered "Milwaukee," but looking into the Explorer, Ryle noticed only a small overnight bag in the cargo area. Ryle found the small amount of luggage to be inconsistent with the length of a trip from California to Milwaukee. When he was able to examine Aispuro-Medina's documents, his suspicions were further aroused by the

inconsistency between a driver's license indicating residence in Wisconsin, and plates indicating residence in California.

Next, Ryle asked Aispuro-Medina to join him in his patrol car. From the car, Ryle called a dispatcher to verify the plates and license. He then called an interpreter available to him through AT&T. Through the interpreter, Ryle asked Aispuro-Medina a series of questions about his residence, travel plans, and place of birth. He also asked again whether Aispuro-Medina "is an illegal alien." The interpreter reported, "He says that he is getting his papers but right now he doesn't have [inaudible], just his license." Ryle asked for a specific reply to his question and the interpreter said, "He says right now he does not have any papers."

At some point the dispatcher reported that Aispuro-Medina's plates and license were valid, but the parties dispute whether the alienage questions were asked before or after this report. Ryle testified that it took four or five minutes to run the license, and his dashboard video of the stop shows that the alienage questions took place about four and a half minutes after the call to the dispatcher. However, the video does not indicate when the license check was completed.

After learning that Aispuro-Medina did not have papers, Ryle called Immigrations and Customs Enforcement ("ICE") to check Aispuro-Medina's immigration status. While waiting for an answer, he left his patrol car to visually inspect Aispuro-Medina's vehicle. He testified that his intent was to check for

- 3 -

any luggage that he might have missed. In doing so, he noticed a secret compartment visible behind the Explorer's rear wheel well. Ryle then utilized a narcotics-trained police dog, which accompanied him in his patrol car, to sniff the vehicle. The dog alerted to the presence of drugs near its rear wheels. Ryle returned to his patrol car, called for backup, and contacted a Spanish-speaking trooper. At Ryle's request, this trooper advised Aispuro-Medina that he was being detained because the dog had alerted to the presence of drugs, and asked Aispuro-Medina further questions about his identity and travel plans. Aispuro-Medina was neither handcuffed nor placed under arrest. While waiting for a backup officer to arrive, Ryle used the dog to inspect the interior of the vehicle, and the dog also alerted near the rear seat. After the second officer arrived, the two troopers inspected Aispuro-Medina's vehicle and found that the secret compartment contained 9.94 kilograms of cocaine. During their inspection, Aispuro-Medina fled from the front seat of the patrol car on foot and was arrested the next day while hitchhiking.

After his indictment on July 19, 2006, Aispuro-Medina moved for suppression of evidence obtained during this incident on the ground that he was unreasonably stopped in violation of the Fourth Amendment. After the district court denied this motion, he filed a conditional guilty plea.[1] During interviews

---

[1] A conditional guilty plea allows a defendant to appeal an adverse determination (here, the district court's suppression ruling) and withdraw the plea
(continued...)

with the government, Aispuro-Medina admitted making three prior trips as a drug courier, for which he was paid $10,000 per trip. On February 16, 2007, the district court sentenced Aispuro-Medina to 151 months' imprisonment. He now appeals the denial of the suppression motion, the denial of several sentence reductions, and the application of an obstruction of justice sentence enhancement.

## II

In reviewing the district court's denial of a motion to suppress, we review the court's factual findings for clear error and view the evidence in the light most favorable to the government. See United States v. Basham, 268 F.3d 1199, 1203 (10th Cir. 2001). We review de novo the reasonableness of a search or seizure under the Fourth Amendment. Id.

Aispuro-Medina argues that his stop was unreasonable under Terry v. Ohio, 392 U.S. 1 (1968), for four reasons: (1) Ryle asked questions through the AT&T interpreter that were outside the permissible scope of the stop; (2) Ryle prolonged the stop by continuing to question Aispuro-Medina after his license was cleared; (3) Ryle further prolonged the stop by inspecting the interior and exterior of Aispuro-Medina's vehicle; and (4) Ryle prolonged the stop by detaining Aispuro-Medina after the dog alerted to the presence of drugs. Aispuro-Medina also argues that Ryle illegally searched his vehicle.

---

[1](...continued)
if the appeal is successful. Fed. R. Crim. P. 11(a)(2).

In assessing the Fourth Amendment constitutionality of a traffic stop, we first ask whether the stop was justified at its inception.  United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005).  We next ask whether the officer's action was reasonably related to the scope of that stop.  Id.  This second inquiry "depends on both the length of the detention and the manner in which it is carried out." United States v. Alcarez-Arellano, 441 F.3d 1252, 1258 (10th Cir. 2006) (quotation omitted).  Aispuro-Medina does not contest that he was stopped legally.  Thus, we only consider whether Ryle's actions were reasonable.

Aispuro-Medina challenges both the content of Ryle's questions regarding his immigration status, and the length of the stop.  Mere questioning does not implicate the Fourth Amendment, however, so long as the questioning does not extend the length of the stop.  Wallace, 429 F.3d at 974; see also Muehler v. Mena, 544 U.S. 93, 100-01 (2005) (holding that police questioning about immigration status did not constitute a separate Fourth Amendment event). Accordingly, we reject Aispuro-Medina's argument that the content of Ryle's questions exceeded the scope of the stop.

As to the length of the stop, Aispuro-Medina contends that Ryle's questions through the AT&T interpreter prolonged the stop because the dispatcher had finished checking his driver's license before the end of the AT&T call.  Based on the evidence before it, however, the district court concluded that the license check was completed at the end of the call.  In reaching this factual conclusion, the

court relied on Ryle's testimony that the license check took four to five minutes and on Ryle's dashboard video recording. Because the video showed that the call to the AT&T interpreter ended about four and a half minutes after the call to the dispatcher, the court concluded that the license check was completed around the same time the AT&T call ended. This finding is not clearly erroneous, and Aispuro-Medina's second argument thus fails.

Similarly, Aispuro-Medina asserts that Ryle impermissibly extended the length of the stop by calling ICE after the conversation with the AT&T interpreter. He is correct that once his license had been checked, the original reason for the stop had terminated, and Ryle could only continue the stop based on a reasonable suspicion of some other crime, or with Aispuro-Medina's consent. See Wallace, 429 F.3d at 974. However, if Ryle had a reasonable suspicion of undocumented immigration status by the end of the AT&T call, his actions would indeed be reasonable.

In evaluating the existence of reasonable suspicion, we "consider the totality of the circumstances to see if [an] officer[] ha[s] a minimal level of objective justification, something more than an inchoate and unparticularized suspicion or hunch." United States v. Moore, 22 F.3d 241, 243 (10th Cir. 1994) (quotations omitted). By the end of the AT&T call, Aispuro-Medina had (1) repeatedly responded "no" in English to Ryle's question "Do you have a green card?", and (2) answered a Spanish translation of Ryle's question "Is he an illegal

- 7 -

alien right now?" with a response translated as "He says right now he does not have any papers." His responses were more than sufficient to give rise to a reasonable suspicion of undocumented immigration status. Therefore, it was not unconstitutional for Ryle to extend the stop in order to investigate this new suspicion by calling ICE.

We turn next to the contention that Ryle unconstitutionally searched Aispuro-Medina's vehicle by walking around it and looking into its windows and wheel wells while waiting for a response from ICE. Because Ryle inspected only parts of the vehicle visible to the public, there was no reasonable expectation of privacy in these areas. Ryle's conduct thus did not constitute a search. See United States v. Rascon-Ortiz, 994 F.2d 749, 754 (10th Cir. 1993) ("The undercarriage is part of the car's exterior, and as such, is not afforded a reasonable expectation of privacy.").

Finally, Ryle did not impermissibly extend the length of the stop by continuing to detain Aispuro-Medina without consent after the dog alerted to drugs in Aispuro-Medina's vehicle. The alert, combined with the discovery of the secret compartment, was sufficient to give rise to a reasonable suspicion that Aispuro-Medina was transporting drugs. Thus, it was reasonable for Ryle to continue the stop and he was not required to seek consent to do so. See Wallace, 429 F.3d at 974.

For these reasons, Aispuro-Medina's arguments that Ryle violated his Fourth Amendment rights fail, and the district court did not err in denying his suppression motion.

**III**

We now consider the assertion that the district court incorrectly applied the United States Sentencing Guidelines to this case. Aispuro-Medina argues that the court erred in: (1) denying a departure for substantial assistance to the government pursuant to U.S.S.G. § 5K1.1; (2) denying a "safety valve" reduction pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. §§ 5C1.2(a) & 2D1.1(b)(9); (3) denying a reduction to his offense level because of his minimal, or alternately, minor role pursuant to § 3B1.2; and (4) increasing his offense level based on obstruction of justice pursuant to § 3C1.1.

Although the Guidelines are no longer mandatory after United States v. Booker, 543 U.S. 220 (2005), district courts are still required to begin the sentencing process by consulting them, id. at 259-60. Therefore, we have held that in order to apply a reasonable sentence, a district court must begin by arriving at a properly calculated advisory Guidelines sentencing range. United States v. Kristl, 437 F.3d 1050, 1054-55 (10th Cir. 2006). "[I]n analyzing a district court's application of the Sentencing Guidelines, we continue [after Booker] to review legal questions de novo and factual findings for clear error." United States v. Apperson, 441 F.3d 1162, 1210 (10th Cir. 2006).

- 9 -

We have no jurisdiction to review a district court's decision to deny a departure under § 5K of the Guidelines, unless the court erroneously interpreted the Guidelines to deprive it of the legal authority to allow the departure. United States v. Fonseca, 473 F.3d 1109, 1112 (10th Cir. 2007). Because Aispuro-Medina has made no such allegation, we lack jurisdiction to review the denial of a "substantial assistance" departure in his case.

The next argument asserted on appeal is that the district court incorrectly found that Aispuro-Medina did not fulfill the five criteria for a "safety valve" reduction, which would make him eligible for a sentence below the statutory minimum. See U.S.S.G. § 5C1.2(a). After hearing argument, the district court concluded that Aispuro-Medina failed to truthfully provide the government with all information he had about the offense at issue and related offenses. The court stated: "[I]t seems to me that you [Aispuro-Medina] have a lot more to tell the United States than you have up to now." On careful review of the record, we cannot say that the court clearly erred.

Defendants who are "minimal" or "minor" participants in an offense may be accorded a role reduction. We have declined to hold that drug couriers are minor or minimal participants in drug offenses where they transport particularly large amounts of drugs or money and make repeated trips. See, e.g., United States v. Mendoza, 468 F.3d 1256, 1264 (10th Cir. 2006) (role reduction denied to courier who transported a large quantity of methamphetamine, was paid $5,000

per trip, and made several trips in a vehicle that he owned). Aispuro-Medina admitted making three prior trips and receiving compensation of $10,000 per trip. In addition, he owned a vehicle altered for this purpose and was transporting nearly 10 kilograms of cocaine. Based on these facts, we affirm the district court's decision to deny a role reduction.

This leaves Aispuro-Medina's claim that the district court incorrectly interpreted § 3C1.1, which provides for a two-level offense level enhancement for willful obstruction of justice. The Application Notes to § 3C1.1 list "escaping or attempting to escape from custody before trial or sentencing" as conduct constituting obstruction, § 3C1.1 cmt. n.4(e), but they also list "avoiding or fleeing from arrest" as conduct not generally rising to the level of obstruction, id. cmt. n.5(d). Application Notes are authoritative interpretations of the Guidelines. Stinson v. United States, 508 U.S. 36, 42-43 (1993). Aispuro-Medina argues that he merely fled arrest, and thus did not merit the enhancement.

This district court did not reach this issue because it apparently misread the Application Notes. Mistakenly believing "avoiding or fleeing from arrest" to be a basis for enhancement, the court stated:

> I think that the conduct of the defendant at the time he was stopped
> by the patrolman on the highway is—indicates that he was avoiding
> or fleeing from what looked like a certain arrest. . . . [A]s soon as the
> secret compartment was discovered, that's when he took out and left.
> I think that's as obvious an avoidance or fleeing from arrest, which is
> what the guideline says, that's a factor, and it does indeed warrant an
> obstruction of justice two-level increase

- 11 -

(emphasis added).

We review de novo the district court's legal conclusion that "avoiding or fleeing from arrest" is a basis for an enhancement. Apperson, 441 F.3d at 1210. Note 5(d) specifies that such conduct is generally not a basis for an enhancement, and the district court did not provide any interpretation explaining why it would be a basis in Aispuro-Medina's case. Accordingly, the court's legal interpretation of Note 5(d) was erroneous. Because the obstruction of justice enhancement must be correctly calculated under Kristl, 437 F.3d at 1054-55, we remand for determination of whether § 3C1.1 applies to Aispuro-Medina's conduct.

## IV

Finally, although not raised by Aispuro-Medina, the government concedes a separate procedural error in his sentencing. Aispuro-Medina's PSR mistakenly stated a Guidelines sentencing range of 121-151 months for an offense with a level of 31 and a criminal history category of I. In fact, the sentencing range for this offense level and criminal history category is only 108-135 months. See U.S.S.G. Ch. 5, Pt. A (Sentencing Table). Relying on this error, the district court sentenced Aispuro-Medina to 151 months, a sentence at the upper end of the range provided in the PSR but outside the correct range.

Because we have already determined that Aispuro-Medina's sentence must be vacated and remanded, we need not decide whether this unchallenged

- 12 -

miscalculation of the Guidelines range constitutes reversible error.  We simply reiterate that on remand, the district court must impose a procedurally reasonable sentence, and one component of procedural reasonableness is correct calculation of the Guidelines range.  Kristl, 437 F.3d at 1054-55.

**V**

For the forgoing reasons, we **AFFIRM** Aispuro-Medina's conviction but **REVERSE** the sentence and **REMAND** to the district court with instruction to **VACATE** the sentence and resentence defendant.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge