**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

CHRISTIAN DELGADO-LOPEZ,

     Defendant - Appellant.

No. 19-3113

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:18-CR-10095-JWB-1)**
_____

Kayla Gassman, Office of the Federal Public Defender, Kansas City, Kansas (Melody Brannon, Federal Public Defender, Kansas City, Kansas with her on the briefs) for Defendant-Appellant.

James Brown, Assistant United States Attorney, Topeka, Kansas (Stephen McAllister, United States Attorney, Topeka, Kansas with him on the brief) for Plaintiff-Appellee.
_____

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

Defendant Christian Delgado-Lopez pled guilty to possession with intent to distribute methamphetamine or a mixture containing methamphetamine. He appeals the district court's denial of a minor-role reduction under United States Sentencing

Guidelines Manual § 3B1.2(b) (U.S. Sentencing Comm'n 2018). Exercising

jurisdiction under 28 U.S.C. § 1291, we vacate his sentence and remand to the district

court.

## I

During a traffic stop, an officer searched Delgado-Lopez's vehicle and found

approximately 13.6 kilograms of a mixture containing methamphetamine. He was

indicted and pled guilty to possession with intent to distribute methamphetamine or a

mixture containing methamphetamine.

In an objection to the presentence investigation report, Delgado-Lopez argued

he was entitled to a two-level "minor-role reduction" under § 3B1.2(b). This

adjustment would entitle him to an additional four-level reduction under

§ 2D1.1(a)(5)(B)(iii), resulting in a significant reduction in his Guidelines range. In

support of his request for a minor-role reduction, Delgado-Lopez provided

information about his offense. He asserted that he had worked full time in Southern

California and supplemented his income through part-time work as a disc jockey.

During one of his disc jockey engagements, an event promoter recruited him to work

as a drug courier. Delgado-Lopez drove four shipments of drugs from California to

Kansas City. Each time, he rented a car in California and left it on a side street,

where members of the drug-trafficking organization loaded the car with drugs. He

drove the car to the destination, where other members unloaded it and paid him

$1000 in cash. He covered his own expenses during the trips.

At the sentencing hearing, the district court concluded that Delgado-Lopez was not entitled to a minor-role reduction. It speculated extensively about the financial wisdom of the scheme. Based in part on information not in the record about gas prices and mileage, it conducted a back-of-the-envelope calculation and estimated Delgado-Lopez's expenses per trip to be $730 and his net profit to be $270. After learning that Delgado-Lopez earned fourteen dollars per hour at his full-time job, the court speculated that he could have worked two eight-hour days and earned $224 had he not acted as a drug courier. It also speculated that Delgado-Lopez could have worked "a day job" and earned $160. The court questioned why anyone would act as a drug courier for fifty to one hundred dollars and said this made Delgado-Lopez's testimony about being just a courier not entirely credible. The sentencing judge stated, "defendants who want to obtain these sorts of adjustments" sometimes "take the risk of assisting with controlled deliveries or providing other information." Finally, the court discussed the large quantity of methamphetamine involved in the offense.

After denying Delgado-Lopez's request for a minor-role reduction, the court found his Guidelines range to be 135 to 168 months' imprisonment. It varied downward, sentencing him to 120 months' imprisonment, followed by three years of supervised release. Delgado-Lopez timely appealed.

## II

"[A] defendant bears the burden of proving by a preponderance of the evidence whether an adjustment under USSG § 3B1.2 is warranted. Because denial

3

of a minor participant status represents a finding of fact, we review the district court's decision for clear error." United States v. Martinez, 512 F.3d 1268, 1275 (10th Cir. 2008) (citation omitted). "In applying the clearly erroneous standard, we will not reverse the district court unless the court's finding was without factual support in the record or if after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made." United States v. Telman, 28 F.3d 94, 97 (10th Cir. 1994).

## A

Section 3B1.2 directs courts to decrease an offense level because of a defendant's role in the offense. These "mitigating role" adjustments are "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." § 3B1.2 cmt. n.3(A). Section 3B1.2(b), the minor-role reduction, provides, "If the defendant was a minor participant in any criminal activity, decrease by 2 levels." Id.[1] This subsection applies to a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." § 3B1.2 cmt. n.5.

The commentary accompanying the section explains, "A defendant who is accountable . . . only for the conduct in which the defendant personally was involved

---

[1] The section also provides for a four-level adjustment for minimal participants and a three-level adjustment for a defendant whose participation is between minimal and minor. § 3B1.2.

4

and who performs a limited function in the criminal activity may receive an adjustment under this guideline." § 3B1.2 cmt. n.3(A). An example is provided of a drug-trafficking defendant "whose participation in that offense was limited to transporting or storing drugs"; such a defendant "may receive an adjustment under this guideline." Id. The commentary also provides a "non-exhaustive list" of five factors for courts to consider:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

§ 3B1.2 cmt. n.3(C).

At sentencing, the district court noted the only evidence that Delgado-Lopez was merely a courier was his own testimony, and there was no "corroborating evidence." We have held that "[a] defendant's own testimony that others were more heavily involved in a criminal scheme may not suffice to prove his minor or minimal participation, even if uncontradicted by other evidence," because "the district court could quite reasonably have found [the defendant's testimony] not credible." United States v. Salazar-Samaniega, 361 F.3d 1271, 1278 (10th Cir. 2004); see also United States v. Salas, 756 F.3d 1196, 1207 (10th Cir. 2014) ("[A] defendant's own

5

assertion that he was a minimal participant is not enough to overcome the clearly erroneous standard." (quotation omitted)); United States v. Onheiber, 173 F.3d 1254, 1258 (10th Cir. 1999) (holding insufficient defendant's own testimony that he was "merely a middleman in the transaction, hired to bring the drugs to another contact, and that he had limited knowledge of and control over the transaction"). Thus, Delgado-Lopez's testimony that he was a mere courier is by itself insufficient to prove he is entitled to the minor-role reduction. That testimony is also insufficient to show the district court clearly erred in its factual determination that he was not entitled to the minor-role reduction.

But our conclusion that Delgado-Lopez's testimony alone is insufficient to establish clear error does not resolve this appeal. The district court set forth detailed reasons for finding Delgado-Lopez not credible and denying him a minor-role reduction. "[W]hen it is apparent from the court's optional discussion that its factual finding may be based upon an incorrect legal standard, we must remand for reconsideration in light of the correct legal standard." United States v. Bowen, 437 F.3d 1009, 1019 (10th Cir. 2006) (quotation omitted). We turn to the district court's articulated reasons.

**B**

Delgado-Lopez argues the court erred by concluding he was not credible based on speculation about the finances of his courier trips. There was no evidentiary hearing in this case. Rather, the judge examined Delgado-Lopez at the sentencing hearing, asking about his job, his hourly wage, the cost of gas for the trips, the cost of

6

renting a hotel room, and the cost of a flight back to California.[2] Based on this information, the judge did a quick calculation to estimate that a drug run would only make Delgado-Lopez about fifty to one hundred dollars more than he would have made if he had remained in California to work.[3] The judge stated that it was "utter foolishness to risk life imprisonment for a hundred dollars" and the "economics" of the scheme gave him "some doubt about whether the thousand dollars is true, [or] whether [Delgado-Lopez] got paid more."

We acknowledge that a district court is not required to explain its credibility determinations and that "[o]ur review of a district court's determination of a witness'[] credibility at sentencing is extremely deferential." United States v. Payton, 405 F.3d 1168, 1171 (10th Cir. 2005); see also United States v. Virgen-Chavarin, 350 F.3d 1122, 1134 (10th Cir. 2003) ("The credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze." (quotation

---

[2] We are not suggesting that a district court may not take judicial notice of facts that are widely known and evident. See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). But for the reasons discussed below, we ultimately conclude that the court's speculation in this case, especially concerning Delgado-Lopez's financial situation and the economic wisdom of his involvement in this offense, goes far beyond taking judicial notice of such garden-variety facts.

[3] In determining whether a defendant is entitled to a minor-role reduction, the Guidelines instruct courts to consider "the degree to which the defendant stood to benefit from the criminal activity." § 3B1.2 cmt. n. 3(C)(v). We observe that a finding that a defendant did not earn much for each drug run actually weighs in favor of finding that he or she played a minor role.

7

omitted)). But when a court's colloquy exposes legal errors in the district court's determination, we need not be willfully blind to these errors. A finding in a sentencing case "must be based on evidence before the court, and thus in the record, and not on speculation or hypothesis." United States v. Moore, 666 F.3d 313, 322 (4th Cir. 2012); see also United States v. Bradley, 628 F.3d 394, 400 (7th Cir. 2010) ("Sentencing judges necessarily have discretion to draw conclusions about the testimony given and evidence introduced at sentencing, but due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations." (quotation omitted)); United States v. Saenz, 623 F.3d 461, 467-68 (7th Cir. 2010) (vacating sentence because district court denied minor-role reduction and stated it was "clear that [the defendant] was far more than a courier," when no record evidence supported such a finding).

In this case, the district court's determination was based on pure speculation about the economics of the drug-trafficking scheme. The court had no evidence with which to evaluate the financial wisdom of Delgado-Lopez's decision to be a drug courier. Its impromptu calculations were based on speculation that Delgado-Lopez could work more hours at his existing job, unfounded estimates about the costs involved in each of his trips, and the assumption that he knew of the relative financial benefits of the arrangement prior to accepting. The court erred by relying on its own speculation in finding that Delgado-Lopez was not credible. Because "it is apparent from the court's optional discussion" that its credibility determination was based on a

8

legal error, <u>Bowen</u>, 437 F.3d at 1019, we remand for resentencing in light of the correct legal standard.

## C

We turn to the court's consideration of Delgado-Lopez's lack of cooperation with the government. At sentencing, the district court expressed the view that "defendants who want to obtain these sorts of adjustments" sometimes "take the risk of assisting with controlled deliveries or providing other information" and that because Delgado-Lopez had not cooperated, he did not deserve to "get the same kind of break" as defendants who do cooperate.

A district court commits legal error when it applies the "wrong test" in making a factual finding at sentencing. <u>United States v. Yurek</u>, 925 F.3d 423, 446 (10th Cir. 2019). Nothing in § 3B1.2 permits a sentencing court to consider a defendant's cooperation in making a factual finding about whether he or she played a minor role. Section 3B1.2(b) provides for a reduction for a defendant who is a minor participant, and the corresponding commentary explains that the adjustment is for "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." § 3B1.2 cmt. n.3(A). The commentary, which includes a detailed explanation of what factors a court may and must consider, does not mention cooperation. <u>See generally</u> § 3B1.2 cmt. And although the determination requires a court to look at the totality of the circumstances, <u>see</u> § 3B1.2 cmt. n.3(C), logic dictates that a defendant's cooperation or lack thereof is entirely irrelevant to the factual determination of whether he or she

9

played a minor role in an offense. By considering Delgado-Lopez's lack of cooperation in determining that he was not entitled to an adjustment under § 3B1.2, the district court applied the wrong test.

We acknowledge that "a trial judge may properly consider a defendant's refusal to cooperate with the Government by refusing to name others involved in the criminal activities, such as drug suppliers." United States v. Ruminer, 786 F.2d 381, 385 (10th Cir. 1986) (citing Roberts v. United States, 445 U.S. 552, 554-55 n.3, 558 (1980)). But the Guidelines do not permit a sentencing judge to consider cooperation under whatever guideline it chooses. Rather, they specifically address cooperation in other sections. See, e.g., U.S. Sentencing Guidelines Manual § 5K1.1 (U.S. Sentencing Comm'n 2018) (permitting downward departure from the Guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance" to the government).[4]

The court also used Delgado-Lopez's lack of cooperation in finding him not credible. It stated that Delgado-Lopez's not cooperating affected the "veracity component" of its analysis—whether the court "believe[d] his testimony about his

---

[4] Further, U.S. Sentencing Guidelines Manual § 5K1.2 (U.S. Sentencing Comm'n 2018) provides, "A defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." We acknowledge that our sibling circuits have held that this section applies only to upward departures from the Guidelines range based on a defendant's lack of cooperation. See, e.g., United States v. Burgos, 276 F.3d 1284, 1291 n.8 (11th Cir. 2001); United States v. Klotz, 943 F.2d 707, 709-10 (7th Cir. 1991). But § 5K1.2 also shows that the Guidelines prescribe limits to a court's consideration of a lack of cooperation.

10

role."[5]  The court did not explain how Delgado-Lopez's lack of cooperation is germane to the issue of credibility.

## D

Finally, we turn to Delgado-Lopez's argument that the court erred by not considering his culpability relative to the other participants in the drug distribution scheme.  A sentencing court considering a § 3B1.2(b) adjustment must consider "culpability relative to other participants in the scheme."  Yurek, 925 F.3d at 446 (holding failure to do so plainly erroneous); see also U.S. Sentencing Guidelines Manual app. C, supp., amend. 794 ("[W]hen determining mitigating role, the defendant is to be compared with the other participants in the criminal activity." (quotation omitted)).  In this case, the district court did not address Delgado-Lopez's guilt relative to the other participants in the drug-trafficking scheme.

On remand, if the district court deems incredible Delgado-Lopez's testimony about his role (without resorting to unwarranted speculation or otherwise committing legal error), it is not required to proceed to analyze his relative culpability.  See Salazar-Samaniega, 361 F.3d at 1278.  But if it does credit Delgado-Lopez's

---

[5]  The dissent argues that the district court used this language to "expressly disavow[] reliance on Delgado-Lopez's lack of cooperation with the government for its minor-role reduction decision."  Dissent at 6 n.3.  While correct that the district court stated it was "not . . . going to punish" Delgado-Lopez for his lack of cooperation, that assertion does not square with the district court's earlier explanation that "defendants who want to obtain these sorts of adjustments in their role . . . sometimes [] do step out and they take the risk of assisting with controlled deliveries or providing other information. . . .  [I]t doesn't seem to me that he ought to get the same kind of break as those who do put themselves at some risk by assisting law enforcement . . . ."

testimony that he was merely a drug courier, it must evaluate his culpability relative to the other participants in the scheme.[6]

**E**

Our dissenting colleague believes that, "setting aside the district court's discussion of financial decisions and lack of cooperation," we should affirm based on the district court's reliance on the number of trips taken by Delgado-Lopez and the quantity of drugs he transported.  See Dissent at 1–2, 6.  We disagree.

As an initial matter, the district court explicitly stated that it was not relying on the number of trips taken by Delgado-Lopez in rejecting the minor-role reduction; instead, it relied on its impromptu economic speculation:  "[T]he other trips, frankly, . . . don't affect my math problem on the money that he receives from making these trips, and I won't use that one way or another to enhance his sentence."  We would be unable to affirm even if we agreed that the district court did, in fact, base its decision on the number of trips taken and the quantity of drugs transported.  In that scenario, the district court would then be required either to assess Delgado-Lopez's "culpability relative to other participants in the scheme," Yurek, 925 F.3d at 446, or

---

[6] In its colloquy, the district court also mentioned the large quantity of drugs entrusted to Delgado-Lopez.  To the extent the court considered quantity in determining the role Delgado-Lopez played in the offense, this was a legitimate consideration because it bears on "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts."  § 3B1.2 cmt. n.3(C)(iv).  But the court's proper consideration of one fact cures neither its impermissible speculation nor its improper consideration of Delgado-Lopez's lack of cooperation.

to properly find his testimony incredible, Salazar-Samaniega, 361 F.3d at 1278. The district court did neither. It did not compare Delgado-Lopez's culpability to other participants in the enterprise, and its credibility determination was wholly predicated on impermissible speculation. Therefore, even accepting the dissent's account of the district court's reasoning, the district court's failure to take either of the possible subsequent steps remains clear error meriting reversal.

Next, the dissent asks us to look past the district court's economic speculation and "affirm[] the denial of this reduction on the basis of supporting record evidence."[7] Dissent at 7. However, this is not a case where we can "determine the district court would have imposed the same sentence even in the absence of the improper factor." United States v. Concha, 294 F.3d 1248, 1256 (10th Cir. 2002). The district court's impermissible economic speculation was the foundation of its

---

[7] In prior cases, we have relied on additional findings made by the district court upon which to base our affirmance despite having otherwise found error. See, e.g., United States v. Lunnin, 608 F. App'x 649, 663 (10th Cir. 2015) (unpublished) (holding the district court's error harmless because it also rejected the defendant's "key fact-based argument"); United States v. Concha, 294 F.3d 1248, 1256 (10th Cir. 2002) (noting that defendant did not challenge additional findings made by the district court that independently supported its decision). Our dissenting colleague asks us to do something quite different: affirm based on findings not made by the district court but instead based on arguments made by counsel and testimony of the defendant not expressly credited by the district court. See Dissent at 4-5. However, supplementing the district court's findings with our own inferences toes the line of usurping the district court's role, and we tread carefully to avoid doing so. See United States v. Ramstad, 219 F.3d 1263, 1265 (10th Cir. 2000) ("Factfinding is the basic responsibility of district courts, rather than appellate courts . . . ." (quotation omitted)).

13

entire analysis. At various points in the sentencing, the court relied on its speculation to declare (1) "this is utter foolishness to risk life imprisonment for a hundred dollars;" (2) "[t]his notion that [Delgado-Lopez is] paid a thousand dollars almost defies logic because the net profit to him from this endeavor is no more than fifty to a hundred dollars more than he could have made carrying on legitimate work in his hometown;" (3) "I'm not sure . . . whether some of the testimony [Delgado-Lopez has] given is truthful, particularly based on some of my thoughts on what he testified or said that he was paid;" (4) "the economics . . . don't make sense, which gives me some doubt about whether the thousand dollars is true;" and (5) Delgado-Lopez's "other trips . . . don't affect my math problem on the money that he receives from making these trips."

We cannot say with certainty that the district court's decision would stand if its foundation was removed. Therefore, we are compelled to remand this case to the district court for resentencing based on the proper legal standard. Bowen, 437 F.3d at 1019; see also Pullman-Standard v. Swint, 456 U.S. 273, 292 (1982) ("[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue.").

### III

For the foregoing reasons, we **VACATE** Delgado-Lopez's sentence and **REMAND** for resentencing.

14

*United States v. Delgado-Lopez*, No. 19-3113

**Eid**, J., dissenting.

The majority reverses the district court's determination denying Delgado-Lopez a minor-role reduction under § 3B1.2(b) because it disapproves of the court's consideration of his financial decisions and his lack of cooperation with the government. Maj. Op. at 8–9. But in my view, even if consideration of these two credibility factors is set aside, there remains sufficient uncontroverted evidence in the record to support the denial. Because I would affirm the district court's decision and not remand the case, I respectfully dissent.

The district court articulated two reasons for its refusal to grant Delgado-Lopez a minor-role reduction. First, the court found it significant that Delgado-Lopez was "entrusted with an extraordinary amount" of drugs. ROA Vol. III at 63. He had transported "13 kilograms of something," which testing revealed to be at least five kilograms of 100% pure methamphetamine. *Id.*[1] Second, the court relied upon the fact that Delgado-Lopez had made four trips for the drug-trafficking organization. *See, e.g.*, *id.* at 62, 64.[2] In sum, Delgado-Lopez was a courier responsible for transporting a large

---

[1] Law enforcement only tested 5 kilograms of the 13 kilograms mixture—as this was the threshold for a violation of 21 U.S.C. § 841(a)(1).

[2] The majority suggests that "the district court explicitly stated that it was not relying on the number of trips taken by Delgado-Lopez in rejecting the minor-role reduction." Maj. Op. at 12. It arrives at this position after pointing to a single statement of the district court: "the other trips, frankly, . . . don't affect my math problem on the money that he receives from making these trips, and I won't use that one way or another to enhance his sentence." *Id.* But the majority's reading is inconsistent with the full record. This statement was made in the context of the district court's analysis concerning the economics of Delgado-Lopez's trip. The district court clarified it would not rely on

quantity of 100% pure methamphetamine over thousands of miles, and he was a repeat

player, having transported drugs across the country on multiple occasions on behalf of the

organization. That Delgado-Lopez was responsible for this degree of task was indicative

of the "measure of trust that the organization" placed in him. *Id.* at 64. For these

reasons, the district court denied him a minor-role reduction.[3]

Our caselaw supports the district court's decision. We have repeatedly highlighted

a defendant's involvement in multiple trips on behalf of a criminal organization as an

appropriate factor to consider in weighing a minor-role reduction. In *United States v.*

*Moreno*, for example, we observed the defendant's "repeated drug trips from Phoenix to

Kansas City" and transport of "high value cargo—6.6 kilograms of 100% pure

methamphetamine" were significant reasons in underscoring his "deep involvement in

---

the economics from Delgado-Lopez's three other trips to influence his analysis
concerning this case. Instead, this information "play[ed] into the overall evaluation of his
assertion that he's a courier." ROA Vol. III at 77. And the majority's position on this
point stands in contrast to the district court's ultimate conclusion as to the minor-role
reduction: "I don't know why they trust him, but *multiple trips* with – I don't know how
much he was hauling in previous loads, but by the time he got to this load they had
entrusted him with a significant quantity. For all those *reasons*, I am overruling the
objection. I'm not going to grant this minor participant adjustment." *Id.* at 64 (emphases
added).
     [3] The majority states that "[t]he district court's impermissible economic
speculation was the foundation of its entire analysis." Maj. Op. at 13–14. For that
reason, it concludes, "[w]e cannot say with certainty that the district court's decision
would stand if its foundation was removed." *Id.* at 14. In my view, the majority
overstates the district court's reliance on the economics of the trip. As described above,
the district court provided two independent reasons from its economic analysis for its
refusal to grant Delgado-Lopez a minor-role reduction: that he was "entrusted with an
extraordinary amount" of drugs, ROA Vol. III at 63, and that Delgado-Lopez had made
four trips for the drug-trafficking organization, *id.* at 62, 64. For the district court, these
two reasons justified denial of the enhancement apart from its consideration of Delgado-
Lopez's financial decisions.

this drug transaction, as well as his participation in the larger operation."  696 F. App'x

886, 891 (10th Cir. 2017) (unpublished).  These factors, in turn, spoke to the defendant's

"more than typical" role.  *Id.*; *see also United States v. Mendoza*, 468 F.3d 1256, 1264

(10th Cir. 2006) (identifying defendant's "three drug-delivery trips" as a basis for

affirming district court's denial of the minor-participant reduction).  Our sister circuits

have also recognized the importance of these factors.  *See, e.g.*, *United States v. Salas*,

752 F. App'x 486, 488 (9th Cir. 2019) (unpublished) (finding that district court did not

abuse its discretion by denying a minor-role adjustment "in light of the totality of the

circumstances, including [the defendant's] prior successful drug crossings"); *United*

*States v. Jimenez*, 687 F. App'x 395, 398 (5th Cir. 2017) (unpublished) (calling attention

to defendant's admission that he transported drugs "on three other occasions for the same

drug trafficking organization" as one of the relevant facts for denying defendant's minor-

role adjustment).

The transportation of a large quantity of drugs has been another key factor in

considering whether a minor-role reduction was properly denied.  In *United States v.*

*Funez*, for example, we upheld the district court's denial of this adjustment for a

defendant who was found with 1,085 grams of methamphetamine.  615 F. App'x 492,

494 (10th Cir. 2015) (unpublished).  After noting the district court found the defendant

"mov[ed] large amounts of drugs between California and Colorado," we articulated how

this court "has found couriers who move large amounts of drugs are quite important to all

parties and cannot be characterized as minor participants."  *Id.* at 495 (internal quotation

marks and citation omitted).  Then in *United States v. Aispuro-Medina*, we remarked that

3

"[w]e have declined to hold that drug couriers are minor or minimal participants in drug offenses where they transport particularly large amounts of drugs or money and make repeated trips."  256 F. App'x 215, 221 (10th Cir. 2007) (unpublished) (citation omitted). Accordingly, we affirmed the district court's decision to deny a role reduction after the defendant was found "transporting nearly 10 kilograms of cocaine" and "admitted [to] making three prior trips" as a drug courier.  *Id.*  Other courts have found likewise.  *See, e.g.*, *United States v. Manguila-Paez*, 713 F. App'x 316 (5th Cir. 2018) (unpublished) (pointing to the transport and attempted sale of a "large quantity of methamphetamine" as one of the factors the district court properly relied upon); *United States v. Corrales-Portillo*, 779 F.3d 823, 833–34 (8th Cir. 2015) (affirming the district court's finding that "the large quantity of drugs recovered" indicated defendants "were deeply involved in criminal activity" (internal quotation marks omitted)); *United States v. Gonzalez*, 534 F.3d 613, 617 (7th Cir. 2008) (observing the criminal organization's "trust[]" in the defendant to "pick up a large quantity of drugs" as one of several factors which supported the conclusion that the defendant's "role in the offense was integral to the operation"); *United States v. Barrera*, 46 F. App'x 674, 677 (3d Cir. 2002) (unpublished) (highlighting defendant's import of "large quantities of drugs . . . on more than one occasion" as representative of the defendant's "knowledge of the organization's scope and purpose").

The nexus between these two factors—namely, involvement in transporting a large quantity of drugs over the course of multiple trips on behalf of a criminal organization—demonstrates "the nature and extent of the defendant's participation in the

4

commission of the criminal activity," U.S.S.G. § 3B1.2 cmt. n.3(C)(iv). This degree of involvement, in turn, demonstrates the defendant's "role as a trusted and valued member of the drug-trafficking organization." *Moreno*, 696 F. App'x at 895. That an organization entrusted Delgado-Lopez with a significant amount of methamphetamine and repeated trips across the country speaks to the significance of his role in the organization.

The record reveals further support for the district court's decision.[4] It indicates Delgado-Lopez possessed some knowledge regarding "the scope and structure" of the drug-trafficking. U.S.S.G. § 3B1.2 cmt. n.3(C)(i). He knew members of the drug-trafficking organization, residing in Mexico, orchestrated the movement of methamphetamine to him in California before his transport of the drugs to Kansas. Aplt. Br. at 5; *see also* Aple. Br. at 4. *See Moreno*, 696 F. App'x at 895 (concluding defendant was aware of the scope and structure of the drug-trafficking activity in part due to his knowledge that the "drugs were imported from Mexico to Arizona and then transported from Arizona to Kansas City"). Delgado-Lopez also retained some "planning" and "decision-making" responsibilities. U.S.S.G. § 3B1.2 cmt. n.3(C)(ii), (iii). He supplied the vehicle used to transport the drugs. ROA Vol. III at 47, 49. There is also indication

---

[4] Although the district court did not make express findings as to these additional considerations, "[w]e do not require a district court to make detailed findings, or explain why a particular adjustment [under the guidelines] is or is not appropriate." *United States v. Bowen*, 437 F.3d 1009, 1019 (10th Cir. 2006) (internal quotation marks and citation omitted); *see also United States v. Maldonado-Campos*, 920 F.2d 714, 718 (10th Cir. 1990) ("[A] district court is not required to announce the reasons supporting a factual finding concerning a role-in-the-offense adjustment under § 3B1.2." (citation omitted)).

that Delgado-Lopez chose his travel companion, because he fit the description of a friend and therefore gave credence to the story Delgado-Lopez initially fabricated concerning his travel plans. Aplt. Br. at 7. This court in *Moreno* identified these two factors as supporting the conclusion that the defendant wielded a degree of planning and decision-making responsibility. 696 F. App'x at 895; *see also United States v. Calderon-Porras*, 911 F.2d 421, 423 (10th Cir. 1990) (identifying that defendant was not simply a courier, in part, because he "furnished his own automobile for the smuggling operation"). And importantly, Delgado-Lopez was able to decide "how to drive the route," that is, "straight through or to [make] stop[s]." ROA Vol. III at 57.

Significantly, Delgado-Lopez does not dispute any of this record evidence on appeal. Furthermore, we review a district court's denial of the minor-role reduction for clear error. *See United States v. Llantada*, 815 F.3d 679, 685 (10th Cir. 2016) (citation omitted). For the district court's factual finding that Delgado-Lopez was more than a minor participant to qualify as clearly erroneous, he needs to show it is "more than possibly or even probably wrong; the error must be pellucid to any objective observer." *Watson v. United States*, 485 F.3d 1100, 1108 (10th Cir. 2007) (citations omitted). Here, Delgado-Lopez does not overcome this hurdle. As detailed above, the district court's decision finds "factual support in the record," *United States v. Martinez*, 512 F.3d 1268, 1276 (10th Cir. 2008) (internal quotation marks and citation omitted), and therefore it is not clearly erroneous.

The majority concentrates on the district court's credibility determination—namely, that Delgado-Lopez was not credible—based on his financial decisions and his

6

lack of cooperation with the government.[5]  Indeed, it considers virtually no other evidence in the record supporting the district court's decision.  *See* Maj. Op. at 12 n.6 (noting, in a footnote, that the district court's consideration of the quantity of drugs involved was appropriate).  Yet, even setting aside the district court's discussion of financial decisions and lack of cooperation, its denial of the reduction should still be affirmed.

This court's decision in *United States v. Lunnin*, 608 F. App'x 649 (10th Cir. 2015) (unpublished), is instructive.  There, the district court denied the defendant's request for a minimal-role reduction after mistakenly stating that a "role reduction is something that applies when a defendant is assessed with more than what they were

---

[5] The majority treats the district court's handling of Delgado-Lopez's lack of cooperation with the government as a factor in denying the minor-role reduction.  *See* Maj. Op. at 9 ("Nothing in § 3B1.2 permits a sentencing court to consider a defendant's cooperation in making a factual finding about whether he or she played a minor role.").  But the district court expressly disavowed reliance on Delgado-Lopez's lack of cooperation with the government for its minor-role reduction decision.  *See* ROA Vol. III at 74–75 (explaining that Delgado-Lopez's "unwillingness to do the controlled delivery plays more to that veracity component of do I believe his testimony about his role, not that I'm going to punish him or deny him a role reduction simply because he refused to cooperate more fully with the Government.  That's the way I'm applying it, is in the context of assessing the veracity of his statements characterizing his role.").  To this, the majority suggests that this statement "does not square with the district court's *earlier explanation*."  Maj. Op. at 11 n.5 (emphasis added).  Yet the very reason the district court articulated that it "[would not] deny him a role reduction simply because he refused to cooperate more fully with the Government," ROA Vol. III at 74, was in response to questions for clarification from Delgado-Lopez, *id.  See United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009) ("The trial court is entitled . . . to be apprised of the claimed error, to consider the contention, and to correct possible error." (internal quotation marks and citation omitted)).  In short, in spite of previous ambiguity, the district court concluded, on the record, that it was not utilizing Delgado-Lopez's lack of cooperation as a factor in denying the minor-role reduction.

involved with in the conspiracy." *Id.* at 662. We found it was beyond question that the district court erred in relying on this principle to deny the reduction. *See id.* ("This language makes clear that, contrary to the conclusion reached by the district court, a defendant such as Lunnin, who was held accountable only for the quantity of drugs that he was personally involved with, is not precluded from receiving an adjustment under § 3B1.2."). Despite this "procedural error," we observed that "[u]nder the law of this circuit, it was [the defendant's] burden at sentencing to prove, by a preponderance of the evidence, that he was a minimal participant." *Id.* at 663 (citation omitted). And the district court "rejected the key fact-based argument made by [the defendant] in support of the minimal-participant reduction." *Id.* "[E]ven though the district court committed a legal error by misconstruing its authority to impose a reduction under § 3B1.2," *id.*, we affirmed the district court's decision after finding the defendant's actions conveyed "that he understood the scope and structure of the enterprise," *id.* (internal quotation marks and citation omitted). Notwithstanding the district court's error, we affirmed the denial of this reduction on the basis of supporting record evidence. That is the course we should take in this case. *See United States v. Concha*, 294 F.3d 1248, 1256 (10th Cir. 2002) (concluding that "when, as here, 'the sentencing decision rested on other permissible factors in addition to the improper factor, and we determine the district court would have imposed the same sentence even in the absence of the improper factor, then we will not disturb the decision'" (quoting *United States v. Whiteskunk*, 162 F.3d 1244, 1250 (10th Cir. 1998))); *United States v. Bowen*, 437 F.3d 1009, 1020 (10th Cir. 2006) ("But even if the district court based its ruling on an erroneous conclusion that it was without authority

8

to grant a mitigating role adjustment, remand is unnecessary because [the defendant] failed to demonstrate that he qualified for a mitigating role adjustment."); *see also United States v. Nunez*, 261 F. App'x 739, 740 (5th Cir. 2008) (unpublished) (affirming district court's denial of minimal-role adjustment under § 3B1.2 after finding that "even if the district court erred," the facts "establish[] that the district court would have imposed the same sentence" (citations omitted)).[6]

Remand is not warranted in this case because the record contains ample and uncontroverted evidence to support denying Delgado-Lopez a minor-role reduction. I would affirm.

---

[6] The majority acknowledges "we have relied on additional findings made by the district court upon which to base our affirmance despite having otherwise found error." Maj. Op. at 13 n.7. But it seeks to distinguish between those cases and the case at bar by stating that it would be inappropriate to "affirm based on findings not made by the district court but instead based on arguments made by counsel and testimony of the defendant not expressly credited by the district court." *Id.* To the contrary, the facts highlighted as additional support for the district court's decision come from Delgado-Lopez, the district court's own findings, or other uncontroverted sources—not "our own inferences," *id.*, as the majority suggests. For example, Delgado-Lopez, himself, admits the facts underlying his knowledge about "the scope and structure" of the drug-trafficking. *See* Aplt. Br. at 5. And he, in turn, cites to the presentence investigation report ("PSR") for these facts. Next, Delgado-Lopez's provision of the vehicle used to transport the drugs was a fact expressly acknowledged by him at sentencing. *See* ROA Vol. III at 49 (The Court: "Okay. So you rented a vehicle—what'd you rent?" Delgado-Lopez: "It was a Ford F-150."); *see also id.* at 47 (Delgado-Lopez's counsel admitting, "[u]pon notice by the source that he was available for a trip, he rented the vehicle"). Finally, the fact that Delgado-Lopez chose his travel companion, in part, to provide cover for his story once more derives from his own brief. *See* Aplt. Br. at 7. Again this fact finds its origin in the PSR. Further, the district court also referenced Delgado-Lopez's travel companion several times at sentencing. *See, e.g.*, ROA Vol. III at 53.